I hope counsel on the final due cases do not mind, but we have lost our extra audience out there, I see, not because of the nature of these cases. I guess they had to get back to school. Next case of the afternoon, I wish I did not have to try to pronounce. DeVillier v. State of Texas, 21.-40750. Ms. Thompson? Thank you, Judge Southwick. May it please the court, this permissive interlocutory appeal is not about whether the state is liable for flooding on the plaintiff's land or the compensation that would be required because the Texas constitutional claims remain pending before the district court. Rather, this appeal is about questions of civil procedure, three questions that are doctrinally important and that will advance the termination of this litigation. The state contends that the district court erred in three important respects. First, the district court held that the Texas constitution waived the state's immunity from liability for taking claims seeking money damages under the Fifth Amendment. Second, the district court erred in finding an implied cause of action to sue the state directly under the Fifth Amendment. And third, and finally, even if there is such a cause of action, the district court erred in disregarding the two-year statute of limitations that would apply to analogous constitutional claims borrowed from Texas law. This court should reverse and direct the district court to dismiss the plaintiff's federal takings claims. I'll turn first to the sovereign immunity question. Let me ask you a question. I was a little puzzled about why you had removed this case. That's understandable, Your Honor. It's because this case involves hundreds of different pieces of property and they span three Texas counties. If it remained in state court, it would have to be heard in three different courts. So, among other reasons that trial counsel took into account, consolidation ... Well, you had a right to do it. I'm not questioning that. Of course. I understand. I'm happy to explain. So the sovereign immunity question then, Lapidus and this court's decision in Myers held that removal to federal court waives the state's retains its common law sovereign immunity from liability, even when it waives it. Now, that common law sovereign immunity from liability is defined by reference to state law, but it's protected by federal law. So, as a matter of federal law, the state's removal here does not affect a waiver of its immunity from liability. Now, as a background principle, the state of Texas has sovereign immunity for any claim seeking money damages. The U.S. Supreme Court explained in the Del Monte Dunes case in 1999 that a taking suit is like other claims seeking money damages. It's seeking damages for the violation. So, as a default rule, the state's sovereign immunity should apply. That immunity from liability, of course, can be protected separately from its immunity from suit. The district court, however, held that the state's immunity from liability for Fifth Amendment claims is waived by the Texas Constitution's separate and independent takings clause. That's a significant claim. The Texas Supreme Court has never held as much. We're not aware of any court in Texas that has held as much. Of course, there are some Texas Supreme Court cases that have mentioned the Fifth Amendment and have even had Fifth Amendment claims in them, but no party has ever raised this issue to the Texas Supreme Court, and so the Texas Supreme Court has at most assumed that there's a waiver of immunity that would encompass a federal taking suit. And the clearest they got to that assumption is the Texas Parks decision? That's one, where they seem to have made that assumption, but as the court explained in City of Baytown, the case that my friend cites in a 28J, that decision explained that litigants have frequently conflated the two clauses and have not recognized that they are independent for justice concurrence. Four justices all agree that the two clauses are not the same, and that even though the court sometimes treats them as if they're the same because of the way the case has been litigated, they're not the same, and sometimes those differences make it. Well, Counsel, since we're really dealing with the immunity of the state of Texas and what seems to be the Supreme Court of Texas, a very competent court, a very faithful court, and the court to answer the question, perhaps we ought to certify this question back to it. Two reasons we don't think the court should do that. First, because although there is an underlying state law question, the sovereign immunity question is protected as a matter of federal law, so it is still a federal law question, even though it refers to state law. But more practically, Your Honor, because that would not resolve this case, even if this Texas Supreme Court concluded . . . But it would get you a reasonable reason for us to get directly to a court and not go to an intermediate court. Certainly. That principle applied here would say you'd certify it back to the court that can answer the question, not to an intermediate court, which we are. So if the Texas Supreme Court ruled in our favor, that would, of course, require the end of the case. We haven't asked this court, and the plaintiffs haven't asked this court to certify the question to the Texas Supreme Court. And a large part of the reason for that is that there's a second issue in this case, which is a pure question of federal law. Whether there's . . . You're dropping your voice a little bit on your thing. I'm sorry, Your Honor. The second question at issue in this case is based on the Fifth Amendment, and it's a pure question of federal law. So even if . . . we tend not to ask the And here, there's a federal law question before the court, whether there is a cause of action to sue under the Fifth Amendment. So in terms of our order of operations, Texas is recommending that we decide this based on a cause of action? Yes. The court could do it either way, but . . . No, but I'm asking which are you recommending? I would recommend that the court turn to the cause of action question only if it concludes that there is a cause of action to sue directly under the Fifth Amendment. Would it then consider the sovereign immunity question? None of these questions, of course, are jurisdictional. I think we have explained in our reply brief, but I'm happy to answer any questions on that if there's still confusion. So I will just turn back briefly to the immunity question. I will note that under Texas law, as under federal law, a waiver of sovereign immunity has to be unequivocal. And there's a real historical disconnect between that principle and treating the Texas Constitution's takings clause as a waiver of sovereign immunity for claims that did not even apply against the state of Texas. The Fifth Amendment wasn't incorporated against the states until 1897. So we can't treat the people of Texas enacting their own constitution with its own independent waiver as a knowing and intelligent decision to allow claims under the Fifth Amendment. That history also takes care of the argument that the plaintiffs newly raised in this court. That argument was forfeited below, but even if the court reaches it, plan of the convention waiver doesn't make sense here. First, the historical reason, the Fifth Amendment did not apply to the states at the time. The historical plan of the convention, because, of course, it's an amendment. So whether it could say anything under that theory, even against the federal government, is doubtful. But in any event, there's also a doctrinal reason for rejecting that theory. And that, among other things, the doctrine deals with the relationship between the states and the federal government. The Torah's decision from last term refers to it as structural waiver, and it has to do with whether Congress can act as against the states. This is, of course, as everyone agrees, not a case where Congress has acted. And so that brings me to the cause of action question. Last question on sovereign immunity. When you say courts have conflated immunity from suit, immunity from liability, has your office consistently stated to Texas courts that you haven't waived your liability? Well, there are... The case that comes to mind is the Texas v. BP case, where the intermediate court said even you had conceded that there was a waiver of immunity. So immunity from liability, of course, could be waived on a case-by-case basis. That's what happened in that case. So that's my understanding. Sometime, the state, of course, doesn't have to always raise the defense of immunity. What's the clearest case where you did in Texas courts? Raise immunity from liability? Yes. We have not had a case, at least reaching the courts of appeals, where the state has been called upon to address the question of its immunity from liability. The recent cases, particularly in the Texas Supreme Court, that have dealt with takings claims have involved local governments. So we haven't had occasion... So maybe do move to the cause of action issue? Certainly. What about the city of Baytown? So in the city of Baytown, the state was not a party. It involves, of course, the city. The state was not a party to that case. The city government that was defending that case, as the concurrence explained, the city government and the plaintiff all treated the Fifth Amendment claim and the Texas constitutional claim as if they were the same. You weren't a party to the case, but the language of the Supreme Court in Texas said, under our Constitution, a waiver occurs when the government refuses, da-da-da. Inverse commendation goes on to say precisely that it is waived. Your Honor, that's right. The Court seems to have assumed that the waiver that the Texas Supreme Court has found... It's not some strange court. This is the court that has... Most of the time, your burden has been protecting the state's interest here, vis-a-vis the federal government, et cetera, et cetera. We see that routinely. Okay. But now, all of a sudden, the Texas Supreme Court is... It says it, so who are we not to certify the question back to it? Your Honor, the Texas Supreme Court was not called upon to address the difference between the Fifth Amendment and the Texas Constitution in that case at all. Everyone agrees with that. When the parties have not raised a question to the Court's attention, Webster v. Falls... Was it just dicta? Is that it? Yes, your Honor. It's an assumption that the Court made in the course of reaching its decision. Well, if the Court has already said it's dicta, answered the question as dicta, and the only reason it's not a colon is we characterize it as dicta, then it seems to me like a classic case, so let Texas decide it. I do not think that the Texas Supreme Court, if squarely presented with this question, would hold that the Texas Constitution waives immunity from liability. That's what they hold. It's whatever they hold, they hold. That's why they're a Supreme Court. Should. If the Court would decide to sui sponte, certify the question, then we would make that argument to Texas Supreme Court. It's no different in federal court than it would be in state court. Now, we don't think that's necessary because there's also this cause of action problem. The district court's decision is quite remarkable in this respect. After decades of the Supreme Court explaining that creating implied causes of action under the Constitution is, if not verboten, at least heavily disfavored, the district court here said that the Fifth Amendment's takings clause itself allows the plaintiffs to sue, that they have no need for any statutory cause of action. That's troubling for a number of reasons. The most glaring is that it's basically applying the heavily disfavored Bivens rationale, but worse, it's applying it against not just an ultra vires act by a federal officer, but against a sovereign state. When Congress wants to create enforcement against the states, it typically speaks much more clearly than that, and Congress hasn't done anything here. Everyone agrees that section 1983 doesn't supply the plaintiffs with a cause of action. There's another hurdle in addition to just the Fifth Amendment problem. Even if the Fifth Amendment could create a cause of action against the federal government, what we're really talking about here is the Fourteenth Amendment. That's what applies to the states. The plaintiffs would then have to show that there is an implied cause of action to sue to enforce the Fourteenth Amendment. Katzenbach rejected that theory in general in the 1960s. There's no implied cause of action under the Fourteenth Amendment. Instead, Congress has its Section 5 authority, and Congress has discretion to determine how the protections of the Fourteenth Amendment are to be enforced. But of course, Congress hasn't done that here. Well, Texas' provisions are much broader in terms of takings, because we know that, because they have an alternative sort of damage provision, essentially. Why does that make a difference? Or at least accentuate why the Texas Supreme Court ought to decide that? Well, the question of the cause of action is a federal law question. And the scope of what exactly the takings clause would protect, I think, is a different question than whether or not there's a cause of action to enforce it. But do you say they have no state cause of action, the damage clause of the Texas Constitution? Your Honor, the plaintiffs have never pointed to anything other than the Fifth Amendment as the source of their cause of action. I'm talking about the Fifth Amendment. I'm talking about the Texas Constitution. Under the Texas Constitution, the courts have created a common law cause of action to bring a suit to enforce the just compensation requirement. If I might just finish answering this question, Judge Hoffwick. If you finish answering Judge Higginbotham's question, I think you're out of time. But if you're still answering, go ahead. Just to finish answering that question, Judge Higginbotham, this Court, of course, doesn't have common law authority to create common law causes of action. And I haven't found any cases where the Texas courts have extended, have actually addressed the question and extended the common law cause of action to the Fifth Amendment. That would be interesting given that it's a federal law claim. You don't need the Fifth Amendment. You've got the Texas Constitution. As a practical matter, the plaintiffs, of course, still have their Texas Constitutional claims. And on the margins, there are some differences in the doctrine as the two takings clauses. So that's why this question . . . And the limitations issue in the background. And the limitations issue in the background. Okay. Thank you, Your Honor. Thank you, Counsel. Good morning, Your Honors. Daniel Charest for the plaintiffs, the plaintiffs, the property owners, and may it please the Court. I'll address first the three key issues that came up in the questioning, and I'll pivot to kind of the actual, my actual argument. Number one, the Texas Supreme Court has spoken clearly, repeatedly, that the United States Constitution serves as a waiver of the Texas sovereign immunity for federal takings claims, most recently in Baytown. These are not dicta, these are not loose words. It is stated repeatedly, citing both the Texas Constitution and the federal Constitution for that proposition, that the waiver of immunity from liability, sovereign immunity for liability, has been waived, full stop. It's a bedrock principle from which all the other analysis flows, and the notion that the state is now saying, oh, that's been dicta for a hundred years, it just doesn't apply. It's not contested, often, mostly, by Texas, because it's so obvious. And the waiver occurred when? Well, the waiver occurred in two ways. One way is by waiving in claims of a similar nature in the Texas Constitution. The Supremacy Clause requires that if a state waives sovereign immunity for acts about a certain type of behavior, then it must apply a federal law for that type of behavior, as well. And we look at Shrock, not Shrock, but... What year? When was the waiver? So there's two aspects, there's two analyses that get you there, so I can't give you a specific year, because the other analysis is by joining the Constitution as a general proposition, the plan of the convention kind of concept. And I will address both of those in more detail, but the second important thing is that, to address that came up in argument before, is this is not an applied cause of action. It is a direct constitutional cause of action, as the Supreme Court has said in First English, and again in Nick, and originally back in Jacobs, even as far back as Monongahela. It is a constitutionally founded claim. It's not an implied cause of action, it's expressed in the Constitution. The third thing on the plan of convention is, we never waived the plan of convention argument. We argued it, it's in the record at 1849 to 51, it's addressed by the court in the record at 1284 to 85, when they're talking about the line of cases of Alden, Manning, S.D.D.S., and Boise. I mean, the notion that we waived this argument just cannot stand. They threw it out in a footnote, I had to go back and figure out what they were talking about, but we, I've been arguing this since the beginning, I know we didn't waive it. So pivoting back to the core questions here. If Texas is correct, then the state of Texas has the ability to take private property without compensation, full stop. The fact is that Texas here has a constitutional waiver of its own that allows liability for citizens, but Ohio does not have the same thing. And so if Texas's theory is correct, the state of Ohio, or any state that changes its constitution to do whatever it wants to do, can take private property without compensation. Because according to Texas, the state has not submitted to being sued or being liable for a taking under the United States Constitution, Fifth Amendment. That cannot be so. And if Texas is correct, and correct, we know Texas is wrong because the Supreme Court spoke, as Judge Higginbotham pointed out in Baytown, it says our constitutions, plural, require the government to compensate property owners when it takes their property for public use. The Baytown- The magistrate was very irate also at the thought there could be no relief. But if there is still pending state takings claims, and there may be an individual officer that would have liability under 1983, it's not as if there's no relief for your clients. Well, the notion that there might be other relief doesn't do anything vis-a-vis the quality and the propriety of having a federal claim. That's what Nick says over and over again. The earliest you could have gotten a claim, a substantive claim, is when the 14th Amendment applied the Fifth Amendment, correct? I think that's probably right in terms of historically true, yes. Okay. So that's 1897. And the principal basis for saying there was a waiver is Section 17, right? Which came into play 20-plus years before 1897. There are two bases. One is Section 17 of the Texas Constitution. The other one is by virtue in 1845 of joining the Constitution, you join the club and you have to live with its rules however they come. And just to point, to tease out that part of the argument, I refer the court to Penn East, Judge- Which is the favored basis for perceiving explicit waiver? I think the most favored way from a plaintiff's perspective is to say, look, the Texas Supreme Court has spoken. We don't have to worry about the analysis. Okay. Well, but then- Did we explicate that? They spoke it based on what? I'm trying to get at the moment of waiver. It would seem to me you'd say it's Section 17, but no. I think Section 17, candidly, I think Section, if you have to put it all together, I think Section 17 is a recognition of the fact that under the Constitution which Texas joined, this is the type of thing government should do. Now, was it done implicitly by joining? Perhaps. But Texas was very clear that it wanted to waive liability for the, immunity from liability for this type of behavior. Inconclusivity though is just, so you're saying Texas somehow waived a substantive right that didn't yet exist? Texas, well, at the moment in time, courts had not concluded that that substantive right existed. I agree with that. That is true. But the- What's your best case that supports that logic? That there can be a waiver of immunity that would apply to a right that hasn't even been created yet? Well, I guess we'd say Penn East, right? Because in Penn East, the idea was this. The state of New Jersey said, oh, look, you can't sue, you can't condemn my property, you, the designee of the federal government. And Justice Roberts said, well, look, in the Fifth Amendment, which was plainly the basis for the plan of convention argument, even though it wasn't in the original convention, in the Fifth Amendment, there is expressly a line that talks about just compensation. Therefore, we can infer from that that the notion of sovereign immunity, sorry, the notion of eminent domain must have been known to the parties, and therefore, you, New Jersey and all states, waived your liability, your immunity from liability and from suit for the notion of eminent domain. The analysis here is even easier because we don't need that last step, that inference that because the Fifth Amendment allows a takings claim, then therefore the eminent domain power must exist. The Fifth Amendment takings claim is expressed in the Constitution. And so if no one back then knew or whatever was later determined to be whatever it is, those are the, the club, the rules of that club developed over time, and the state of Texas has to live with that. It can try and leave, I guess, if it wants to, but the rules are what the rules are. And so by joining into the compact, that's the idea of the plan of convention argument, is that the state of Texas has made itself, and all states, when they join into the union, they waive some aspects of their own sovereignty. They are equals amongst themselves, they are subjected in some respects to the state of Texas, and they also, specifically in the Fifth Amendment context, have obligations to the citizens. The obligation to the citizen under the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, is that the government must pay for what it takes. And so I'm struggling a little bit with the, you know, like, where and time it happened, because they're just two different paths, but the fact that one path may also have been the same answer as the second path doesn't mean that either one is wrong. They're both correct. And incidentally, just as an aside, this court has said, in a procuring opinion written by Judge Garwood, citing then-State Judge Benavides, that the courts of the state of Texas are open to inverse combination claims on the basis of the Fifth Amendment. You know, what they're talking about is, we have to remand you, you know, we have to dismiss you because you didn't have, you had not proven a waiver of an immunity from suit. But don't worry, you have immunity from, that you have a waiver from immunity from liability below. And that's what these, that's what, that's what Judge Garwood said in Gutterflow, which is cited in the briefs. The notion that, that there is no waiver by, there's no acceptance of liability by the state of Texas for this constitutional claim, there's no case that says that. And the only way the state of Texas can even stand in front of you and say it's true is to say that every court that ever said that was talking dicta. Every court that ever said that didn't really know it was assumed. And that, you know, we heard it today, Judge Garwood is not a loose writer. That is his, that was his view. So moving on. What happened here was that we, recognizing that we had, we could not bring a claim until 1983, filed suit in Texas state court where we, we understand and we I think have established that the, the state courts of Texas, we filed in the court of general jurisdiction, the state courts of Texas are, are able to hear and adjudicate over both the Texas constitutional claims and the federal constitutional claims. That's the line of cases you see in Manning, S.D.D.S. and Boise, Boise Cascade. All of those cases, courts look at the question of does the state, is the state required to hear and entertain a U.S. constitutional taking claim? And the answer is uniformly yes. And so when we, we filed there, the, the state removed to federal court, bam, under Myers, step one, there is no more immunity from suit. The judges in Botham's point why they did it, I don't know, but they did it, fine. So now we, the state, having selected the forum of the, of the federal district court, can't complain about its 11th amendment immunity from suit kind of, um, sovereign immunity. So there we are. And then the question is, when you're in, the, the second step is Myers is to see whether and of what nature of immunity the state can prove their burden exists. The state, though, has to recognize the fact that it has waived its own immunity for takings. That's undeniable. The state also recognizes, has to recognize that the state joined the union. That's undeniable. Those two set of facts lead to the, the conclusion that the state of Texas is amenable to suit for federal fifth amendment takings claims. And that the analysis there, um, oh, I, I skipped one step. So that's what, so when we're, the second step of the analysis on Myers is we look at that, that federal jurisdiction question, whether, sorry, the federal takings claim question, whether there is immunity from liability in the state court. And then as to the question on, um, 1983, Jacobs, First Amendment, the, the constitution itself is the source of the, of the right to sue. You don't need the 1983 statute. So on the first point of waiver by virtue of the Texas immunity, the section 17 waiver of immunity, I'd refer the court to Howlett and Black and also Testa, all cited in the brief. How that stands for the proposition that if a state makes itself amenable to regulation by state law, and in, in the Howlett case it was, uh, you could sue the state for violation, for tortious violation, torts that sounded in constitutional claims, effectively 1983 type claims, then the state must also entertain 1983 claims, federal claims. The point there being that if the state might maintain its immunity, in which case neither federal nor state law could apply to it. But if the state allows itself to be amenable to claims that regulate a certain type of behavior, it cannot pick and choose between federal and state law. It must allow both because federal law is, of course, under the supremacy clause, the law of the land. And so you can't have a waiver for certain types of actions for state court actions only. If you make, if the state makes itself amenable to suit for some sort of action under state law, it is then therefore amenable to sue under federal law. That is, again, Howlett. And there's no question, right, that the Texas Supreme Court waived all aspects of its immunity under the Texas Constitution. The state's argument is, right, but that only applies to the Texas Constitution. Howlett says you can't do that. You can't so limit it. And Black is an example of that where, uh, same sort of situation where Black allowed claims to proceed on a state court basis. And then they said, well, they said, look, then you have to also allow these 1983 claims to proceed because they are the federal law. They are the law of the land. You can't just limit yourself to the, to the restrictions of, of, uh, I think Justice Black just said federal law is state law. Exactly right. That's the, that is the driving force under Howlett. And thank you for cutting me to the, to the point there. That's exactly right. And more so with the federal Constitution. It is the law of the land. And that leads into the notion of, of the, um, plan of convention argument. By joining the union, Texas agreed to follow and be bound by the U.S. Constitution and the federal law and to divest itself of certain aspects of its sovereignty. All right. And that's when we talk about the structure of the constitution, we're talking about, okay, well look, before Texas became a state, it was sovereign, had all its rights, whatever it does. But when it joins in, it has that relationship that I talked about. It is a little bit subject to the United States government. It is equal par with its sister states. And it, in the Fifth Amendment context draws, um, obligations, uh, to its citizens. And Roberts, uh, writing for the court in Penn East Pipeline says states can be sued if they have consented to suit in the plan of the convention. And again, they're talking about their, the context was, can the state be sued? The answer was yes, because of the Fifth Amendment's inclusion in the, in the, uh, in the, in the constitution. And the point that, look, if, if, if it talks about having to pay a property owner for a taking, it must then therefore include the fact that a taking can exist. But again, here, we don't have to make that second step, because the fact that the Fifth Amendment was the very principle on which Penn East concluded eminent domain power existed, then we know the Fifth Amendment was part of the original plan, too. We don't have to make that next leap. And again, moving on, Justice Roberts said, in where the states agree to the planned convention not to assert any sovereign immunity defenses, no congressional abrogation is needed. That's the concept of the plan of the conventions. By joining this club, you have to live by the rules. And even if the rules change over time and you don't like it or whatever, fine. And that's another point in terms of, uh, Judge Higginson about your question about the timing of it all. Justice Roberts goes out of his way when he's talking about in the plan of convention to say, look, just because the causes of action were found to be valid later before the, the joining or, or at the, at the plan of convention or through an amendment here, the timing doesn't matter. The ultimate, the, the, the fact is inclusion in the, in the convention means, in the Constitution, means you're subject to the Constitution full stop. And you don't get to stop living up to it after, uh, because you don't like it anymore. And that's, there's a little, um, I think a funny little note in Testa where it says, you know, disputes about the supremacy clause were resolved by war. I mean, that's, that's, they're only out and they, but they can't, right? I guess they could, but they, but they're not doing that. They're not suggesting that they are bound by the Constitution as it exists, as it's articulated going forward. And, and there's no question, but that the fifth amendment provides for a right of compensation to private property owners whose property has been taken. All right now, um, I'd mentioned in, uh, briefly these line of state cases, Manning, SDDS, and Boise Cascade, and every one of them wrestled with the same question from the state court perspective. Are we, the state, required, not may, permissive, but required under the, under the fact of our joining the Constitution to, um, to allow these cases? And, and, and everyone found the same thing. I'll quote from Manning, the taking cause creates a cause of action against the state, which is actionable in the state court and to which the state may not assert immunity. There's case after case of the, there's three of those cases that are very well reasoned. They all follow, they all look at the question after Alden, uh, and conclude that even though Alden sort of reinforced the notion of state sovereign immunity, that doesn't change the fact that under the fifth amendment, there is a direct cause of action against even a state. And by joining into the union, the sort of self-executing nature of that claim makes that claim mandatory. Now I will really briefly touch on the 1983 issue. Um, again, this is, we're not asking for an applied cause of action or anything. You can look at Nick, uh, you can look at Jacobs, you can look at, um, first English, all of them talk about the right being founded in the constitution that the quote from Jacobs is literally statutory recognition was not necessary. A promise to pay was implied because the duty to pay imposed because of the duty imposed by the amendment, the fifth amendment and the suits were thus founded upon the constitution of the United States. It is a rare thing to be sure that there is a right of action under the constitution. I think the, the, the cases talk about only two places, one of which is the fifth amendment, but we don't need the 1983, uh, act to allow the case to go forward. The Supreme Court says so, and the Texas has no actual answer for that. And further, Nick really highlights the point of what 1983 does, what function it serves to the extent it serves any function, none here, by the way. And that's just like the Tucker act is, let me say it this way from the beginning, the fifth amendment provided for a waiver of liability, a waiver of sovereign immunity, vis-a-vis liability. Can the fist could be affected by this right? Fifth amendment says, yes, absolutely. But you couldn't sue the federal government until the passage of the Tucker act, because that talks about the immunity from suit aspect of immunity. Just so 1983 talks about the court for that same liability, but in courts of general jurisdiction in the state of Texas, where the state allows these types of claims to happen, there is no immunity from suit in the state of Texas. And that's why rather than start in the federal court, we went to the state court and that's, and that's the state removed it and that's fine, but that doesn't change, uh, the rationale and the propriety of what we've done. The only state court case that decides for the 1983 argument is this Azul Pacifico. Uh, you'll have to read those cases a little bit to understand what happened there. The, the, the initial court ruled in favor of our way. It pulled that opinion and set out a, an unreasoned, very terse opinion that was just turning on state on statute of limitations. And the ninth circuit itself doesn't even look at that case or look at that, that, that case anymore because in seven up Pete ventures, it ruled exactly as we say, which is that the Supreme court has long recognized that the just compensation clause of the fifth amendment is self-executing. The right to recover just compensation is guaranteed by the constitution and statutory recognition is not necessary. So the ninth circuit doesn't even stand by its own case. Okay. Thank you, Your Honor. I'll start with the Azul Pacifico case where my friend ended the ninth circuit held unequivocally that there is no direct cause of action to sue under the fifth amendment. We disagree with the plaintiff's characterization that the ninth circuit has backed away from that. That continues to be its holding in this court should not split from that, creating a circuit split with the ninth circuit would be ill-advised under these circumstances because the ninth circuit was correct. There is no direct cause of action issue under the fifth. We don't hear that in this court too often. Keep going. It's certainly not from the state of Texas, but go ahead. Indeed, Your Honor. Now the ninth circuit was correct because of, there are a number of reasons it was correct. One of which is that saying that there is a direct cause of action to sue under the fifth amendment would make enforcement of this, what really is the 14th amendment's fundamental right to just compensation, congressionally unalterable. The court explained in Armstrong just a few years ago that it is a problem to prevent Congress from being in control of how federal law will be enforced. Now, Congress, of course, has set parameters for the enforcement of 14th amendment rights, including through 1983, where it does allow private suits for damages. But of course, that has not been extended to the state. Those decisions like that show that Congress has determined that this is not an enforcement mechanism that should be appropriate. And the 14th amendment gives Congress that discretion. Is the Tucker Act relevant to the way both of you are arguing this case? It's relevant in the sense that it waives the federal government's sovereign immunity, limited to claims in the court of federal claims. Of course, it doesn't directly apply to this case, but it certainly... If there were an implied cause of action, there'd be no need for the Tucker Act. I think that's right, Your Honor. In the Maine community decision from a few terms ago, the court assumes that the Tucker Act supplies all that's needed for a suit against the federal government. And so it would be questionable, even as to the United States, that the Fifth Amendment creates its own implied cause of action. And that's, of course, putting aside the additional problem of it needing to be an enforcement of the 14th amendment. I take the plaintiff's argument to be that, on their plan of the convention theory, that the states join the union with an understanding that they will submit their sovereignty to any future federal right that might be created or recognized. That wouldn't be limited to a Fifth Amendment just compensation requirement. That would be quite a broad expansion of the plan of the convention rationale that the Supreme Court has set out. As I've already noted, this is about the structure of the states and the federal government. So extending the plan of the convention rationale in that way doesn't fit. And if it did, it would have quite broad ramifications for the state's immunity. We would certainly urge the court not to take that step. I'll just turn briefly to the discussion of the Texas Supreme Court. Certainly, we recognize that the Texas Supreme Court said in the city of Baytown and in a few other recent cases that there seems to be a waiver of immunity that would apply to Fifth Amendment claims. I will emphasize that that question was not presented, and questions merely lurking in the record are not so decided as to constitute precedents. That's Webster v. Hall. The Texas courts apply that principle as well. To put it a little differently, you might say that there's no drive-by holding on that question. What do you say the scope of a waiver is on removal to the federal court? Certainly from suit. What's your take on that? It's certainly a waiver of the state's immunity from suit. But ultimately, when it comes time to judgment and execution of that judgment, there is still immunity from liability. So we would ask the court to dismiss because there's no point in going through the suit if there's immunity from liability under these circumstances. But we haven't asserted a jurisdictional immunity in the sense that the state can't be subjected to pretrial litigation and the burdens of litigation to begin with, which is what you would normally see in a sovereign immunity argument in federal court. I see my time is expiring. Thank you. All right, counsel. Thanks to all of you for your assistance on this case.